IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AIR PRODUCTS AND CHEMICALS, INC., <br><br> Plaintiff and Counterclaim-Defendant, <br><br> v. <br><br> ERIC P. WIESEMANN, *et al.*, <br><br> Defendants and Counterclaim-Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) Civ. No. 14-1425-SLR <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM**

On December 23, 2015, defendants filed a motion for sanctions of plaintiff Air Products and Chemicals, Inc. ("Air Products") based on spoliation of evidence.[1] (D.I. 79) Defendants have asked the court to sanction Air Products for: (i) spoliating electronically stored information ("ESI") stored on the Rapid Log server of EPCO Carbon Dioxide Products, Inc. ("EPCO"); (ii) shredding EPCO documents stored in an off-site warehouse; and (iii) wiping computers belonging to former EPCO employees. (D.I. 80 at 7-10) Because the motion for sanctions was "rife with issues of fact," the court held the motion over for trial. (D.I. 181) The court will now rule on that motion and assumes the reader is familiar with the findings of facts and conclusions of law in the opinion issued simultaneously with this memorandum.

Sanctions for spoliation are determined under two different rubrics depending on the type of evidence. ESI is governed by the recently amended Fed. R. Civ. P. 37(e).

---

[1] Defendants abandoned their motion for sanctions based on Air Products' purported violation of the scheduling order after Air Products presented evidence that the parties had agreed to an open-ended deadline for the production of documents. (D.I. 80 at 19; D.I. 104 at 22; D.I. 110) Accordingly, the court will not address that part of defendants' motion.

Sanctions for all other types of evidence continue to be governed by the court's inherent authority "to control litigation and assure the fairness of proceedings before it." *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 385 (D. Del. 2016) (quoting *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 323 (D. Del. 2013)). When litigation is pending or reasonably foreseeable, "[a] party has a duty to preserve evidence it knows or reasonably should know is relevant to the action." *Magnetar Tech. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 480 (D. Del. 2012); *Capogrosso v. 30 River Court East Urban Renewal Co.*, 482 Fed. App'x 677, 682 (3d Cir. 2012); Fed. R. Civ. P. 37(e) (stating that spoliation occurs if ESI "that should have been preserved in the anticipation or conduct of litigation is lost"). Defendants fail to clear the threshold issue of showing that relevant evidence was lost or destroyed.

A.  **Rapid Log ESI**

The court cannot impose sanctions for the alleged loss of ESI on the RapidLog server, because defendants have not shown that any ESI on the RapidLog server was actually lost. Defendants rely on a mischaracterization of a letter from Air Products' counsel to claim that Air Products itself admits that it destroyed ESI on the RapidLog server after six months. (D.I. 80 at 8 (citing to D.I. 82-1, Ex. 14 at 2)) The letter states no such thing. Instead, the letter obliquely refers to EPCO's policy to not keep the drivers' paper logs after six months, a policy with which defendants were surely familiar as former managers of EPCO.[2] (D.I. 82-1, Ex. 14 at 2; D.I. 200 at 58-59, 197-98) Moreover, the evidence in the record indicates that the electronically scanned copies of

---

[2] This EPCO policy is consistent with DOT regulations stating that "a motor carrier shall retain records of duty status and supporting documents ... for each of its drivers for a period of not less than 6 months from the date of receipt." 49 C.F.R. § 395.8(k)(1).

2

the drivers' logs stored in RapidLog were never lost, because Air Products did not change EPCO's data retention policy, and EPCO's policy was to not delete any ESI in RapidLogs. (D.I. 104-3, Ex. 14 at 1; *see also* D.I. 82-1, Ex. 10 at 90-91; D.I. 200 at 58-59) Accordingly, defendants have not met the threshold requirement under Fed. R. Civ. P. 37(e) of showing that ESI was actually lost.

### B. Shredded Documents

EPCO stored several hundred boxes of old paper records in an off-site storage shed near its Monroe offices. (D.I. 82, Ex. 7 at 17-18) In September 2014, EPCO's controller (Patrick Cristomo) instructed EPCO's operation manager (Tim Cain) to shred some of the documents in the storage shed. (*Id.* at 89) The shredding stopped shortly after it started, because an Air Products employee, who overheard the shredding, alerted the legal department which immediately ordered the shredding to stop. (*Id.* at 99-100) Assuming without deciding that Air Products had a duty to preserve relevant evidence at that time, defendants have not shown that the shredded documents were relevant to this litigation.

Karen Rush, Air Products' Manager of Enterprise Records Management, was responsible for investigating the incident. She testified under oath that the "incident was totally unauthorized and it was a unilateral decision by" Cristomo. (D.I. 82, Ex. 7 at 19-20) Her understanding from conversations with Cain is that he shredded only 20 to 30 pages of automatic deposit slips for former employees that contained their social security numbers. (*Id.* at 89) Defendants have given the court no reason to find that either Cain or Rush were being less than candid in their testimony. Old deposit slips for

3

former employees have no relevance to the claims or defenses in this litigation. Accordingly, the court will not sanction Air Products for shredding these documents.

### C. Computers of Migrated EPCO Employees

On April 17, 2015, after the parties had exchanged their initial disclosures under Fed. R. Civ. P. 26(a)(1)(A), their discovery disclosures under paragraph 3 of the Default Standard for Discovery, and several letters agreeing to additional search terms and custodians, Air Products notified defendants that ESI on the computers of eight former EPCO employees had been wiped upon their termination. (D.I. 54; D.I. 55; D.I. 104-2, Exs. 1-4) Defendants claim that by wiping the computers, Air Products irretrievably lost relevant ESI. For all but one of the migrated employees, however, defendants made no effort to show that the employees even had relevant ESI. Defendants did not provide their title, describe their responsibilities, or offer any "concrete, plausible suggestions as to what the destroyed evidence might have been." *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 319 (D. Del. 2013) (internal punctuation omitted) (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011). The only migrated employee for which defendants made any relevance argument was Joseph Worley.

Defendants' actions in this litigation undermine any assertion that the lost ESI was relevant. None of the migrated employees were named as custodians. (D.I. 54; D.I. 55; D.I. 104-2, Exs. 1-4) Except for Joseph Worley, none of their names were included as search terms. (*Id.*) Indeed, defendants deemed this ESI "important" only after being notified that it was not preserved. (D.I. 104-2, Ex. 5) Pure speculation is not enough to find that relevant ESI was destroyed. *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 579 (3d Cir. 2007).

4

As for Worley, defendants claim his ESI was relevant because he managed EPCO's logistics, fleet maintenance, and driver compliance, all issues central to this litigation. (D.I. 80 at 12-13) The fact that Air Products' complaint describes several EPCO emails that included Worley gives the court strong confidence that Worley's computer held relevant ESI. (*Id.*; D.I. 48 ¶¶ 110-11) Fed. R. Civ. P. 37(e) requires, however, a finding that the ESI "cannot be restored or replaced through additional discovery." As the Advisory Committee notes, ESI "often exists in multiple locations," making a loss from one source "harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e) Comm. Notes (2015). Thus, a court cannot award sanctions when emails from one source has been lost, but the same emails are available from another source. *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016). Clearly some of Worley's emails were on other computers, because several of his emails were produced in discovery and admitted as joint exhibits at trial. (*See, e.g.*, D.I. 82-1, Exs. 17 & 18; D.I. 104-3, Ex. 11 at Ex. F; *Id.* at Ex. 15; JTX 130; JTX 131; JTX 132) Defendants have not shown that Worley's emails cannot be replaced through additional discovery.

In a manner troubling to the court, defendants waited until their sur-sur-sur-reply brief to argue that Worley had ESI regarding the number of drivers EPCO should have employed at closing, which was irretrievably lost when his computer was wiped.[3] (D.I. 174 at 1) From reading Worley's testimony, there is some doubt that he created any independent, stand-alone analysis that was lost. Instead, Worley testified that he

---

[3] Defendants submitted an opening brief, reply brief, sur-reply brief, and a "supplemental sur-reply brief." (D.I. 80, 110, 127, 174) As a result, Air Products was given no opportunity to respond to this argument.

5

photocopied logs for 10 to 15 drivers, downloaded a report from EPCO's Q7 database, and gave that information to Wiesemann as "supporting documents" for his request for more drivers.[4] (D.I. 175-1 at 184-86) If that is the case, this same information would exist in its original form. If, however, Worley did create an independent analysis regarding the number of drivers EPCO needed to employ to meet its delivery needs, the court finds, after careful consideration of the parties' claims, that this information was not relevant to determining whether defendants committed fraud or breached the representations and warranties in the SPAs based on routine violation of HOS Regulations. (D.I. 206 at 9-10)

At trial and in their post-trial briefs, the parties presented a considerable amount of testimony regarding the number of drivers EPCO needed to legally service its customers. (D.I. 201 at 425:13-426:4 (Vallone); D.I. 203 at 1112:15-1114:12 (Craft); D.I. 204 at 1198:20-1200:11 (Camilli); D.I. 200 at 45:5-24 (Demler); D.I. 201 at 320:24-324:10 (Worley)) Each opinion relied on assumptions regarding average customer demand, average number of miles per region, average miles per hour, and average number of hours driving per day. Although these estimates may have been useful for planning purposes, they are not a good proxy for concluding that EPCO in fact regularly violated HOS Regulations. Some of the assumptions were admittedly "arbitrary." (D.I. 204 at 1199:5-1200:11) In addition, EPCO's supply and demand fluctuated daily, weekly, and with the seasons. (D.I. 203 at 1108:11-1113:24 (Craft discussing how planning was effected by changes in customers' demand, plants shutting down,

---

[4] It is not clear from the record whether Worley used the paper or electronic copies of the drivers' logs.

weather, driver unavailability, equipment breaking down, and peak seasons); D.I. 204 at 1205:16-1210:21 (Camilli discussing the extreme variability in supply, customer demand, and driver availability)) EPCO was not a business that operated under a steady-steam of consistent averages. Thus, the estimates regarding the average number of drivers EPCO should employ does not accurately determine whether EPCO's drivers actually violated HOS Regulations. The court concludes that any analysis estimating the number of drivers EPCO should employ was not relevant to the claims and defenses in this litigation. Accordingly, Air Products will not be sanctioned for the loss of this ESI.

I. **CONCLUSION**

For the foregoing reasons, defendants' motion for sanctions is denied. (D.I. 79) An appropriate order shall issue.

Dated: February 21, 2017

                                             Senior United States District Judge